May it please the court, Yakov Roth on behalf of the appellant Douglas Mackey. The only element of section 3143B that the government contests here is whether Mackey's appeal raises a substantial question. And so the only question for the court at this juncture is whether the appeal is close. We don't have to show that we will succeed. We don't even have to show we are likely to succeed. We just have to show that the questions presented, at least one question presented by the appeal is fairly debatable or could very well come out the other way. Now the principal question on appeal is whether section 241 actually criminalizes this conduct. I think it's very hard to deny that that is a substantial question. And I'd like to just make three sort of high-level points that bear on why that is. The first is, as the government agrees, section 241 is subject to a qualified immunity type overlay. In order to be criminally prosecuted, the law has to be clearly established. In other words, it needs to have been clear at the time to any reasonable person that the conducted issue was illegal. And so what that means is it's not enough for the government to come up with a clever or creative theory for extending a criminal statute to a new context. Again, it needs to have been clear. What's the difference between fraud on the ballot box and fraud on a voter? Well, they're totally different ways of injuring the right to vote. The principle behind the ballot box fraud cases that the Supreme Court decided 100 years ago was, look, you can give someone a ballot and let them vote, but if you then tear it up, these are generally government officials who are supervising the balloting process. If you then tear it up, you haven't really provided the right to vote. What if instead you give them a fake ballot and a fake address to mail it to? How is that different? I think if you are the government and you are superintending the election process and you falsify the process, falsify the results, I think that fits into the context of what the Supreme Court was saying. What if you're a private citizen? You're the Ku Klux Klan and you're not the government. But you're attempting to suppress the vote and to have the vote come out in a fraudulent manner. If you sort of invade the premises and tear up the ballot, you don't have to be a government official to be guilty under those circumstances. That's right. If you invade and burn ballots, you could be held liable. So what I'm asking is what's the difference between burning the ballot and sending in the mail to voters a phony ballot, a return address that says mail this, and the address happens to be the address of the local Ku Klux Klan, not the address of the voters, and besides, they don't allow voting by mail in that jurisdiction. How is that different from destroying ballots that have already been cast? Well, Your Honor, first of all, I think the main difference is it operates through deceiving the voter through speech, which unlike any of the context- This is not, you're not saying this is political speech, right? It is speech, and it is protected speech under Alvarez. How so? I mean, this is not a speech about Hillary Clinton is a pedophile. That may be false, that may be libelous, but at least it is, I would say a very good argument then when you say, well, it's hard to distinguish this from all kinds of mud that gets slung by politicians. Right. So, Your Honor, there's two responses to that. One is the government's theory would equally cover that. So if you do read the statute the way they read it, right? It's anything that frustrates or impedes, including deceiving a voter. I don't see any reason why it wouldn't cover lying about a candidate, which is going to influence the way you cast your vote. Well, it influences the way, for whom you vote. Right. That's what elections are about. And Your Honor, that, and that seems to me to be all about political speech, and very much protected. But speech that says, the polling place is over here, and here's a guy with a box, but it's not. So, Your Honor, just to use the same analogy that Your Honor was using, if I went to the ballot box and I was given a ballot and said, here's your ballot, but you can only vote for this candidate, that would certainly violate Section 241. And so, if you extend that principle in the same way that the government is trying to extend it here, to speech that deceives you about where to put the X, I think it's very hard, well, I think it's very hard to draw the distinction between something like this, and the next stage would be lies about whether to vote, right? So, there are long lines at the polls right now. That is going to discourage people from voting. Don't forget to bring your passport. You're going to need that to vote. That's going to discourage the right to vote. May I just ask you, how fast can you get a brief in on the merits? We can brief the merits pretty quickly. The reason, the concern is there are a lot of amici who I know want to participate, and I want to make sure they have sufficient time to participate as well. I'm asking about the amici. They can take care of themselves. I'm asking you, when can you get a brief in? We can certainly do it before the end of the year. I'm going to ask the government the same thing, because if they say they want to take 90 days, I'm going to have a very different attitude towards whether there's a bail possibility here than if they can get this in very fast. Sure, and look, right now he's scheduled to report in January, so we're not going to be able to get it decided. We can get a brief in well before then. But it's not going to be decided, and so our concern is we want to make sure that if we win the appeal, it actually matters. Absolutely, absolutely. But we're happy to file earlier if that's the exchange. If I could just make a couple of quick points. One is I do think it's telling that the government cannot identify a single case in the history of this statute where it has been used to prosecute deceptive speech. And let me suggest that's not because Mr. Mackey is the first person to spread false information about voting or elections. There's a serious dog-that-didn't-bark problem here with the government's interpretation. And there is an active political debate and has been for some time, including in Congress, about whether and how to regulate false speech about voting and elections. Nobody has ever suggested, well, hey, wait, actually this has all been a federal felony since the Civil War. At least I think that creates a substantial question for appeal. And then, you know, in terms of the First Amendment point, I would just point the court to Alvarez. Alvarez made clear even false speech and even low-value false speech is not categorically unprotected. We still have to run it through either strict scrutiny or intermediate scrutiny depending on which the subject matter and how you read the concurrence. Those are meaningful barriers for the government to overcome in a case like this. I know I'm over time. If I could say a word about the venue issue, I think it actually raises an independently substantial question. Before you switch to venue counsel, just going back to Judge Lynch's point about how this conduct was an arguable fraud, how is that so even in an era where you have a number of states that were expanding opportunities to vote early, to vote by absentee ballot, to vote by delivering your ballot to a drop box, in that context, how is the appellant's conduct not fraud even back in 2016 when states were doing this even prior to COVID? I'm not sure I fully understand. Those additional ways of casting a ballot would be protected by Section 241. So if somebody stole a drop box, for example, that would fall within a long line of cases for 100 years. If anything, I think it cuts the other way because obviously there was a substantial political debate in this country and still is about some of those means of voting. For example, there is political commentary casting doubt on the integrity of some of those means of voting. On the government's theory, I don't see why that wouldn't also be prosecutable. If somebody said, don't do mail balloting, it's all a fraud, that's frustrating or impeding the right to vote. If they do it knowingly intending to suppress the vote, on the government's theory, that would be a federal felony. It's just a very, very far-reaching theory that, you know, especially in this context, the Supreme Court has warned again and again not to read criminal statutes to have this sort of broad, these broad ramifications where it is not clear from the text. Just very quickly on the venue question, I appreciate it. The sole theory of venue that the government actually proved at trial here was that Internet data associated with the tweets had crossed the Eastern District on the way from Manhattan to the rest of the country. Now, there is a paragraph in the venue statute that expressly provides for venue in districts through which certain things move. But that paragraph does not apply to this case. It's limited to interstate commerce and certain other offenses. It's never, nobody's ever suggested it applies. And this Court has never found venue outside that context based solely on something crossing through a district. This theory of venue, like the theory of guilt, has significant ramifications, especially in an era where many offenses involve an online component. It would allow the government to prosecute many offenses anywhere in the country. And it's, again, in our, from what we can tell, completely unprecedented. And so we think that, too, is a substantial question on appeal that warrants relief. So for both reasons, we would ask the Court to grant release pending appeal so that the appeal does not become purely academic. Thank you. Thank you, Counsel. We'll hear from the government. May it please the Court. Judge Lynch, you asked whether this was like a fake ballot box where ballots can be put in and the ballots are either taken or they're destroyed. We would say this is the digital version of that. The defendant invited people to submit their ballots into essentially an Internet black hole, such that the individual thought they had voted, they wanted to vote, but the votes would disappear. We think this fairly fits into an attack on the process of voting. I get that. Okay, let's talk about the timing here. This man is sentenced to seven months in prison. It's a little difficult for me to see how this appeal, even on an expedited basis, gets processed within seven months. It seems to me there's got to be something of a sliding scale, doesn't there? I mean, it's one thing when somebody's got, you know, can benefit from the appeal if it wins, no matter when he wins. But here it seems to me if there's any chance at all that he can win on either of these theories, you're basically saying we get to punish him whether he wins or loses. Yes, Your Honor. My understanding is that's a disfavored factor, and the reason is, is that if somebody gets seven months or they get 307 months, this Court says that they will adjourn that sentence pending appeal if there's a substantial question. To do otherwise, to treat a defendant like this who got a very short sentence differently, essentially gives him a benefit that others would not get. Well, it's partly because maybe he didn't do something so terrible, or maybe he's not really a danger to society. The kind of people who get 307 months are usually violent criminals or criminals engaged in a violent business, and there's a pretty significant interest in getting them locked up. So they've got to show that they've got a really good chance to get out, right? Here you've got somebody who's, if he has any chance at all of winning, he's going to win nothing on your position. I think that's right, Your Honor. Your Honor, the government takes its position because we just do not think the issues he's positing are substantial in that way. They're interesting issues. They are highly consequential issues and important issues, but they are not close in the sense that this Court says that you would grant bail in this extraordinary circumstance. How close do they have to be? I mean, what about the take the venue issue? You know, once every 10 years, we actually reverse a conviction on the basis of venue. I got one as a defense lawyer in the 1990s. I got the one in the 1990s. And after all, I mean, you know, venue is twice in the Constitution, not just once. Yes, Your Honor. You know, it's in the Declaration of Independence. It's one of the grievances against the king is he had our people sent to Halifax to stand trial. Yes, Your Honor. It's one of the critical things. It's not a trivial matter. My win was a case that was tried in the Eastern District, should have been in Southern, a mile away. This Court reversed because the venue wasn't proper. This is a significant issue, isn't it? It is a significant issue, Your Honor. But we believe that the government's proffered theory of venue fits with this Court's innumerable precedents when it comes to handling what level of contact is necessary for a continuing violation like conspiracy, as well as just the manner in which this Court has handled schemes that are accomplished through electronic means. Those are in a constant state of evolution, and this Court has generally permitted cases like this to be prosecuted based on these grounds. Well, it's in a state of evolution. It sounds to me like we've got issues that are unresolved. Do you have a precedent for saying that any district through which an electronic communications pass is suitable for venue? No, Your Honor. This precise fact has not been articulated in that level of clarity. But I believe it fits with all the cases in that direction, Your Honor. Well, I mean, did any act take place in the district where the case was prosecuted? Well, there is a second theory of venue, but for the prime theory of venue that is being articulated here, this is the pass-through venue theory. We are alleging that the defendant who was in Manhattan, that the essential acts in furtherance of the conspiracy passed through the EDNY on their way to Twitter, and we could prove that definitively. So that is the act. And how did it pass through? In two different ways. One was through a computer using conventional hard-line Internet. The other was through a phone. In both cases, they moved through the coaxial cables that move under the bridges through the territorial waters of the EDNY, which SDNY has joint jurisdiction for. But it was proved conclusively. It wasn't a matter of speculation. Okay, it was proved conclusively that that's the fact. Yes. And the fact is that the communication went through a coaxial cable running through the water. Yes, Your Honor. Okay. Your friend says there's no Section 241 cases involving deceptive speech. Is that fair? Your Honor, I think it's fair to say that a case exactly like this has not been prosecuted. So it's at least novel, whether it's close or not, I guess is where you – I think it's novel in the sense that schemes of this sort we have not seen in case law. As Your Honor pointed out, there's numerous fraud cases. Fraud is often used to deny the choice of voting, whether it be by destroying ballots, by changing the ballots after they're made, using fraud to attack the process, the time, place, and manner of voting. This is what we're alleging here. That has been litigated. And the cases from Yarbrough – Are there cases in U.S. history where somebody provided misinformation or deceived voters or potential voters about where to go, what to do, who to vote for, things like that? Well, that's not exactly what's happening here. I think this was mentioned before. If this was an attack on the choice that is made for a voter, I think we would agree that we would have a First Amendment problem. In this case, this is an effort to stop people from voting at all by casting their vote in an ineffective way. And we would say that this is the digital version of those cases where ballots were destroyed, ballots were changed, where the actual – it was an assault on the choice itself, not essentially a meta-consideration where it's an attack on the process of voting, not the actual choice they're making. There's obviously lies everywhere when it comes to elections, and we are not stating that 241 reaches any of those. This is about the process itself, which I do believe is in the heartland of what 241 was meant to police, whether it was physical attacks on people trying to vote, whether it was fraud in destroying the ballots along the way, or in this case, making sure the ballots actually vanish before they're cast. In each case, it's about the casting of the vote itself, not the choice the person might make as a voter. If they file their brief on New Year's Eve, how fast can you get yours in? We can get it in by the end of January. So 30 days-ish? Yes, Your Honors. So we could get this on a calendar for argument as early as February, and then if the case is as easy to decide as you think it is, he can be happily dispatched to prison sometime in March instead of in January, and that's what we're here fighting about. Yes, Your Honor. If Your Honor wants an expedited briefing schedule, we are happy to oblige. Okay. Thank you, Counsel. Thank you, Your Honor. Thank you both. We'll take another advisory. Next.